FILKINS et al., Appellees,

v.

CALES, Appellant.

[Cite as *Filkins v. Cales* (1993), 86 Ohio App.3d 61.]

Court of Appeals of Ohio,
Logan County.

No. 8-92-14.

Decided Jan. 29, 1993.

*Deborah K. Wolf,* for appellees.

*J. Gordon Rudd,* for appellant.

Shaw, Judge.

Defendant-appellant, Gary Cales, appeals from a judgment of the Common Pleas Court of Logan County, Juvenile Division, granting plaintiffs-appellees' motion for judgment notwithstanding the verdict and finding Gary to be the father of plaintiff, April Filkins.

The record reveals that plaintiff, Brenda Filkins, gave birth to April on November 11, 1984. Thereafter, plaintiffs initiated a parentage action to establish a parent-child relationship between April and Gary. Plaintiffs alleged that the period of conception was on or about April 1984, and that Gary is the father of April.

A jury trial commenced on July 18, 1991, to determine whether a parent-child relationship existed between Gary and April. Due to the inability of the jury to reach a verdict, the trial court declared a mistrial. On July 26, 1991, plaintiffs filed a motion for judgment notwithstanding the verdict, or, in the alternative, a motion for a new trial. In its judgment entry dated March 27, 1992, the trial court granted plaintiffs' motion for judgment notwithstanding the verdict, and specifically found Gary to be the father of April. The trial court also conditionally granted plaintiffs' motion for a new trial.

Gary now appeals from the trial court's judgment entry and asserts the following assignment of error:

"The Trial Court Erred in Sustaining Appellee's [sic] Motion for Judgment Notwithstanding the Verdict."

In this paternity action, the plaintiffs' burden of proof was to establish the existence of the parent-child relationship between Gary and April by a preponderance of the evidence. *Domigan v. Gillette* (1984), 17 Ohio App.3d 228, 228, 17 OBR 494, 495, 479 N.E.2d 291, 291; see R.C. 3111.08. Pursuant to R.C. 3111.03(A)(5), a man is presumed to be the natural father of a child under the following circumstance:

"A court or administrative body * * * has ordered that genetic tests be conducted to determine the father and child relationship and the results of the genetic tests indicate a probability of ninety-five per cent or greater that the man is the biological father of the child."

At trial, Dr. Edward J. Ball, the Scientific Director at the Community Blood Center in Dayton, Ohio, testified that the genetic testing of April, Brenda, and Gary disclosed a 98.5 percent probability that Gary is April's father. Dr. Ball further gave his expert professional opinion that the genetic blood tests were strong evidence in favor of Gary being the biological father of April.

In addition to Dr. Ball's testimony, Brenda testified at trial that she and Gary had sexual intercourse twice in April 1984, the alleged month of conception. She also testified that she had sexual intercourse with David Guyan on approximately April 14, 1984. However, the record reveals that the results of genetic blood testing excluded David as the biological father of April. Brenda further testified that she had sexual relations with no other man during the month of April 1984.

Gary testified under cross-examination that it was possible that he had sexual intercourse with Brenda in April 1984, on any of the three dates that he had stayed at the L–K Motel in Bellefontaine. He further testified that neither party brought up the issue of using any form of contraceptive.

Based primarily on an ultrasound performed on May 23, 1984, Dr. Jeffrey Barrows, Brenda's physician, testified that he estimated the time of conception to be roughly around April 7, 1984.

Based upon all the foregoing, we believe the plaintiffs clearly established a prima facie parent-child relationship by a preponderance of the evidence.

■ Pursuant to R.C. 3111.03(B), the presumption of paternity resulting from the genetic testing may only be rebutted by clear and convincing evidence. As defined by the Ohio Supreme Court in *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 180–181, 512 N.E.2d 979, 984, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus:

" 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' "

■ On cross-examination, Dr. Barrows stated that April's estimated gestational age at birth was about thirty-four weeks. While Dr. Barrows' gestational age assessment based upon the ultrasound was within the alleged period of conception, a thirty-four-week gestational estimate would have placed the probable date of conception in March 1984. Because the record indicates that Gary and Brenda did not have sexual intercourse during the month of March 1984, the appellant maintains that such evidence was sufficient to rebut the presumption of paternity resulting from the genetic tests.

Although Dr. Barrows' testimony does contain certain inconsistencies, it is our opinion that such evidence alone does not rise to the level of clear and convincing evidence, as is required to rebut the presumption of paternity established by the genetic test results in this case.

■   The Ohio Supreme Court set forth the established standard for reviewing a motion for judgment notwithstanding the verdict in *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19. Construing the evidence most strongly in favor of the party against whom the motion is made, such a motion should be denied where there was substantial evidence to support the nonmoving party's position upon which reasonable minds could differ. *Id.* at 347, 28 OBR at 411, 504 N.E.2d at 21. Based upon the record, we conclude that there was not substantial evidence upon which reasonable minds could reach different conclusions as to the existence of a parent-child relationship between Gary and April.

Accordingly, Gary's sole assignment of error is overruled, and the judgment of the trial court granting plaintiffs' motion for judgment notwithstanding the verdict and finding Gary to be the father of April is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT, J., concurs.

EVANS, J., dissents.

EVANS, Judge, dissenting.

After careful consideration of the majority opinion in this case, I find that I must respectfully dissent because I believe the two-step approach used by the majority in analyzing this case is incorrect. The majority first considers the presumption raised by the results of the genetic blood test and concludes that this presumption has not been overcome. Then with that presumption in place the majority proceeds to apply the *Osler* test and find that there is no substantial evidence upon which reasonable minds could differ. In this way the majority affirms the judgment notwithstanding the verdict entered by the trial court.

The sole issue in this case is the correctness of the judgment notwithstanding the verdict. Our analysis of the case should begin there. The Supreme Court announced the test for entering a judgment notwithstanding the verdict in the trial court in *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 412, 504 N.E.2d 19, 21 as follows:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions."

I find the following evidence in the record which must be construed most strongly in favor of the appellant in this case. Dr. Ball, the expert who testified concerning the genetic blood test, admitted on cross-examination that the genetic test did not prove that appellant was the father of the child and that any other man with the same type of blood as that of the appellant would have the same result on this test. Dr. Barrows, appellee's obstetrician, testified that he had an ultrasound test performed on appellee on May 23 and from that test determined the age of the fetus to be seven to eight weeks. If this testimony is construed most strongly in favor of the appellant (by using eight weeks as the age of the fetus), it will put the date of conception back to approximately March 28. Dr. Barrows did testify, as the majority points out, that he placed the date of conception on roughly April 7, but this testimony must be evaluated in light of the *Osler* test. The date is in fact only the rough estimate of the doctor. Further, Dr. Barrows testified that when the child was born it was estimated that the period of gestation was thirty-four weeks. This testimony would place the time of conception on or about March 18. These two pieces of evidence are extremely important to the appellant because the appellee testified without qualification that she did not have intercourse with appellant in March 1984. In other words, the mother admits lack of access in March, but her physician, by the use of two different tests, places the time of conception in March. When this conflicting evidence is coupled with the admission by Dr. Ball that there are others who could be the father of the child in question, there is clear and convincing evidence to rebut the presumption of paternity.

Consideration of the nature of a presumption will make clear the error in the two-step approach used by the majority. 31A Corpus Juris Secundum (1964) 196, Evidence, Section 115, contains the following statement:

"While it has been said that there is but one type of presumption in the strict legal meaning of the word, and that is merely a general rule of law that under some circumstances, in the absence of any evidence to the contrary, a jury is compelled to reach a certain conclusion of fact, which presumption is raised only in the absence of any real evidence of the existence of the ultimate fact in question, but which is not in and of itself evidence * * *."

And in 29 American Jurisprudence 2d (1967) 200, Evidence, Section 165, the following statement appears:

"A rebuttable presumption of law is a rule of the substantive law declaring that for procedural purposes a certain prima facie probative force will and shall, until evidence sufficient to prove to the contrary is introduced, be provisionally attached to a given state of facts. The existence of such a presumption is generally held to impose on the party against whom it is invoked the duty to offer evidence as to the facts, and in the absence of such evidence, the trier of the facts

is compelled to reach a conclusion in accordance with such presumption. Most courts take the view that such a presumption is not evidence, has no weight as such, and disappears completely from the case upon presentation of contravening evidence * * *."

Based on this analysis, I conclude that since the rebuttable presumption created by R.C. 3111.03(A)(5) is not evidence, it should be given no consideration when applying the *Osler* test. I do not intend that the test results are not to be considered, but only that the statutory presumption to be inferred from the test results is not to be considered as evidence. This is true even if the presumption has not been overcome by clear and convincing evidence. The majority has overlooked the fact that the sole issue before us on review is not whether appellant presented clear and convincing evidence that could overcome the statutory presumption. Rather, our task is only to determine whether judgment notwithstanding the verdict was properly granted under the *Osler* standard, keeping in mind that "the weight of the evidence" is not "for the court's determination in ruling upon" such motion. *Osler,* 28 Ohio St.3d at 347, 28 OBR at 411, 504 N.E.2d at 21. Thus, the correct approach is to consider all the *evidence* (including the test *results* ) in the record construing it most strongly in favor of the appellant, together with all reasonable inferences that can be drawn from such evidence. See 89 Ohio Jurisprudence 3d (1989) 286, Trial, Section 237. If the *Osler* test is correctly applied it will be seen that there is substantial evidence in favor of the appellant upon which reasonable minds can differ. The fact that a jury of eight was unable to find that appellant was the father of the child is certainly some evidence of this.

I would reverse the judgment of the trial court and remand the case for further proceedings.