[Cite as *In re J.D.*, 2017-Ohio-1081.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

IN THE MATTER OF:            )    CASE NO. 16 BE 0024
                              )
       J.D.,                  )
       MINOR CHILD.      )
                              )    OPINION
                              )
                              )
                              )

CHARACTER OF PROCEEDINGS:    Juvenile Appeal from the Court of
                                            Common Pleas, Juvenile Division of
                                            Belmont County, Ohio
                                            Case No. 15 JG 0548

JUDGMENT:                     Affirmed.

APPEARANCES:

For Defendant-Appellant:        Caitlin Doty *pro se*
                                            153 Sugar Street Apt. 3
                                            St. Clairsville, Ohio 43950

For Minor Child               Atty. Mary Warlop
                                            116 Cleveland Ave. N.W. Suite 500
                                            Canton, Ohio 44702

For Plaintiff-Appellee:          Atty. Rebbeca L. Bench
                                            23 Driggs Lane
                                            Bridgeport, Ohio 43912

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  March 22, 2017

ROBB, P.J.

{¶1} Appellant Caitlyn Doty appeals the parentage and parenting time decision of the Belmont County Common Pleas Court, Juvenile Division. The juvenile court adjudicated Appellee Gregory Weisal as the father of J.D. and provided him parenting time every other weekend. The mother contends the court erred in finding he was the father based solely on his testimony where she filed a motion containing a request for genetic testing. She also contends the order of parenting time was not in the child's best interests. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On August 19, 2015, the father filed a "petition to establish parental rights and responsibilities" regarding the parties' child, who was not yet two years old. (Orig. all caps). He asked to be adjudicated the child's father and sought an order granting parenting time. The mother obtained a continuance of the September hearing in order to obtain counsel. Two months later, an attorney obtained another continuance on the mother's behalf. On November 30, 2015, days after the attorney sought a continuance, the mother filed a pro se "petition for continuance of the proceedings and for issuance of child support order." (Orig. all caps). She asked for a continuance due to her job loss and inability to retain counsel, noting Legal Services turned down her request for counsel. The motion then stated: "While Respondent is seeking employment, she is asking that paternity would be established and confirmed through DNA testing in order to place a temporary support order with the Belmont County CSEA * * *." The mother advised she would continue to permit unlimited visitation at her home.

{¶3} The court granted a continuance. On the father's motion, the court consolidated the parties' motions for purposes of hearing, and the matter was again continued. On February 5, 2016, the father filed a motion for interim parenting time, disclosing a lack of contact with the child since he filed the initial petition and explaining his attorney's unsuccessful attempt to negotiate visitation. Further continuances moved the hearing to April 13, 2016.

**{¶4}** At this hearing, the magistrate observed the mother was not present and said, "It is my understanding * * * she was present, you did speak with her, but she has removed herself from the courthouse." The father's attorney responded, "Yes ma'am, I did introduce myself to her and talked with her for a little bit and when I went back out there now she's gone." (Tr. 4). The magistrate said the mother's request for child support would be dismissed as she was not present and the case would proceed on the father's petition to establish parental rights and responsibilities and on his request for parenting time. (Tr. 4-7). The magistrate noted any child support request could be referred to the Child Support Enforcement Agency by either party filing a 4D application with the agency. (Tr. 14).

**{¶5}** The father's attorney explained the father was not seeking custody and was seeking only the court's standard Option 1 parenting time, which he would exercise at his parents' house. (Tr. 6). Counsel elicited the following testimony from the father: he was seeking a standard Option 1 order; his parenting time would be exercised at his parents' house every other weekend; his parents' house and the mother's house were both located in St. Clairsville; he was not asking for a mid-week visit; he understood the child was too young for extended holiday or vacation visits; and it was in the child's best interest for him to receive the requested visitation. (Tr. 7-8, 10-13).

**{¶6}** The father testified he and the mother were in a relationship, and the child was born as a result of that relationship. (Tr. 8). He did not sign the child's birth certificate but said there was no dispute he was the child's father. (Tr. 9-10, 13). When asked if he was consistently in the child's life, he said he purchased items for the child and tried to visit as often as the mother and the maternal grandmother would permit. He was asked if the mother let him have any parenting time with the child since he filed the action, to which he replied: "No, because I do not want to see her at her mom's house, and she refuses to bring her to my parent[s'] house. * * * And I don't want to go to McDonald's or go to Walmart just to walk around with her when it's ridiculous - - I should be allowed to see her at my parent[s'] house." (Tr. 9). He noted his parents wished to have a relationship with the child as well. (Tr. 10).

When asked if the mother would let him see the child in the absence of a court order, he answered: "Not unless the Court says so, I'm not - - not on my terms, at her house which I will not do because she doesn't want my parents there and all that." (Tr. 11).

{¶7} On April 15, 2016, the magistrate filed a decision stating: the mother's motion for child support was dismissed due to her absence from the hearing; the father testified and sought Option 1 parenting time; he was adjudicated the father of the child based upon his admission; it was in the child's best interest for him to receive Option 1 parenting time; parenting time would take place at the paternal grandparents' house; and parenting time would begin April 22, 2016. The decision further stated the father's attorney would prepare a special entry within 14 days. A subsequent magistrate's decision was filed which was essentially the same as the first but which incorporated and attached two standard court orders: the Option 1 parenting schedule and the General Court Orders as to parenting time.

{¶8} The mother filed a timely objection. (She also sought to stay the proceedings pending the ruling on her objections.) First, she explained how she missed the hearing: she arrived in the hallway outside of the courtroom at 12:45 p.m. for the 1:00 p.m. hearing; she remained there until 2:45 p.m. "at which time she became increasingly ill and lightheaded and went outside to get some air"; she checked with a deputy who said he would watch the monitors and alert her if her case was called; after being outside for 10 minutes, she returned to the hallway outside of the courtroom and waited; unbeknownst to her, the hearing was in progress; and at 3:25 p.m., the magistrate advised her the hearing had already taken place.

{¶9} Second, the mother alleged the magistrate's parenting time decision was not in the child's best interest, opining "any visits at this time where the mother is not present will cause undue stress to her child as well as place the child in harm's way." She complained of the lack of a gradual transition. She asked for an evaluation of the father before unsupervised visits started, accusing him of being an alcoholic and substance abuser. She claimed he had been incarcerated for

committing domestic violence against her. She noted her offer of unlimited supervised access to the child, which the father declined; she claimed she offered this to his parents as well. She said the father saw the child approximately 30 times since the child's birth and spent no time with the child in the past seven months. The mother disclosed the child was in therapy for eating and speech difficulties and experienced separation anxiety.

**{¶10}** On May 11, 2016, the juvenile court overruled the mother's objection. The court adjudicated Mr. Weisal the biological father of the child and found Option 1 parenting time was in the child's best interest, noting the attachment of the Option 1 schedule and the General Court Orders. The entry said all parenting time shall take place at the home of the paternal grandparents.

**{¶11}** The mother filed a timely notice of appeal. The mother sought a stay pending appeal and asked this court to appoint counsel and provide a transcript due to indigency. The transcript had not been previously ordered for the juvenile court's review of the magistrate's decision. After stating the mother had no right to court-appointed counsel, we appointed counsel for the child. The child's attorney submitted the transcript of the magistrate's hearing and filed an *Anders* brief, requesting to withdraw as she found no error prejudicial to the rights of the child. A proposed assignment of error was set forth for our review.[1] The mother filed her brief on October 11, 2016 and a reply to the father's brief on December 22, 2016.

PATERNITY

**{¶12}** The mother's first assignment of error contends:

"THE TRIAL COURT ERRED IN ADJUDICATING MR. WEISAL THE MINOR CHILD'S FATHER BASED UPON HIS ADMISSION ALONE, AFTER DISMISSING APPELLANT'S MOTION FOR DNA TESTING PRIOR TO HEARING INITIAL PETITION AND GRANTING MR. WEISAL PARENTING TIME."

---

[1] This procedure was set forth for criminal cases when appointed counsel determines the appeal is frivolous. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The child's attorney notes this court's holding: "There is considerable precedent in Ohio caselaw for applying the rules and procedure used in *Anders*, a criminal case, to civil permanent custody cases in which appointed counsel finds no merit in the appeal and wishes to withdraw." *In re K.B.*, 7th Dist. No. 09BE24, 2010-Ohio-1015, ¶ 1, 12 (citing other districts). It should

{¶13} The proposed assignment of error set forth by the child's appointed counsel provides:

"THE TRIAL COURT ERRED BY FINDING THE APPELLEE TO BE THE FATHER AND ESTABLISHING PARENTAGE AS SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE."

{¶14} A parent-child relationship may be established by acknowledgment of paternity filed under R.C. 3111.20 to 3111.35, through a parentage action brought under R.C. 3111.01 to 3111.18, or through the administrative process set forth in R.C. 3111.38 to 3111.54. R.C. 3111.02(A). "An action brought pursuant to sections 3111.01 to 3111.18 of the Revised Code to declare the existence or nonexistence of the father and child relationship is a civil action and shall be governed by the Rules of Civil Procedure unless a different procedure is specifically provided by those sections." R.C. 3111.08(A). Therefore, where the statutory presumptions (with different burdens) are inapplicable, the burden of proof in a parentage action is by a preponderance of the evidence. *See, e.g., State ex rel. Gill v. Volz*, 156 Ohio St. 60, 65, 100 N.E.2d 203 (1951) ("A preponderance of the evidence is sufficient to support a judgment of filiation"); *Filkins v. Cales*, 86 Ohio App.3d 61, 63, 619 N.E.2d 1156 (3rd Dist.1993); *Domigan v. Gillette*, 17 Ohio App.3d 228, 479 N.E.2d 291 (2d Dist.1984). None of the statutory presumptions apply in this case. *See, e.g.,* R.C. 3111.03(A) (born during marriage; attempted marriage; acknowledgement of paternity filed but not yet final), (B) (these presumptions can only be rebutted by clear and convincing evidence).

{¶15} Contrary to the suggestion in the text of the proposed assignment of error, the juvenile court could rationally conclude Appellee was the child's father by a preponderance of the evidence. As this court observed in a parentage action: "As per R.C. 3111.10(A), the existence of sexual relations between the parties at any possible time of conception is admissible evidence relating to paternity. *Kennedy v.*

---

be pointed out this is not a termination of parental rights case. We accept counsel's request to withdraw and will address counsel's proposed assignment of error nonetheless.

*Sherwood*, 7th Dist. No. 00 CO 57 (Sep. 21, 2011) ("We do not reverse judgments as being against the manifest weight of the evidence as long as the judgment is supported by some competent, credible evidence.") In addition to evidence of sexual relations between the parties during possible conception, other admissible evidence "may" include an expert's statistical opinion based on the duration of the pregnancy, genetic test results, medical evidence, and "[a]ll other evidence relevant to the issue of paternity of the child." R.C. 3111.10(A). This is a list of admissible evidence; it is not a list of required evidence. *See id.* "[E]vidence relevant to the issue of the paternity of the child" would include an admission by the father as to his paternity of the child. *See* R.C. 3111.10(A).

**{¶16}** In response to the father's parentage action, the mother filed a motion seeking child support from the father, which was to be heard that day as well; the motion was dismissed at the beginning of the hearing due to the mother's absence from the courtroom. The father's testimony established the mother allowed him to visit with the child (but on her terms and in her presence). He did not sign the child's birth certificate but said there was no dispute he was the child's father, adding "She's mine." (Tr. 9-10, 13).

**{¶17}** The father testified he and the mother were in a relationship, and the child was born as a result of the relationship. (Tr. 8). Although he did not specify the parties had sexual relations on a certain date, he did testify to the child's date of birth and stated the child was born as a result of the parties' relationship. The fact he did not specifically use the word "sex" is irrelevant. The fact the parties had sexual relations during a possible time of conception was implicit in his testimony, providing sufficient evidence of his parentage when viewed in the light most favorable to his case. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 9-12 (distinguishing between weight and sufficiency in a civil case).

**{¶18}** Weight of the evidence involves "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Eastley*, 132 Ohio St.3d 328 at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Here, there was no evidence presented to

contradict the evidence set forth by the father. The father's credibility was the province of the trial court. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984) ("giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony"). The decision as to the father's parentage was supported by a preponderance of the evidence.

{¶19} Next, in reviewing the law on parentage actions, appointed counsel cites R.C. 3111.06(A), which requires the action to be brought in "the county in which the child, the child's mother, or the alleged father resides or is found * * *." Counsel believes there was no evidence on residences. However, this is incorrect. Initially, we note the use of "or" in the cited statute, R.C. 3111.06(A). The father suggested he stays at a residence in "Ferry" and at his parents' house in St. Clairsville. (Tr. 7-8). The father also testified the mother lived on Sugar Street in St. Clairsville. In addition, various portions of his testimony implied the child lived with the mother. (Tr. 11). (The local residences mentioned in the father's testimony were consistent with the paperwork filed by both parties in this action.)

{¶20} The remaining issue set forth in the mother's first assignment of error and in an argument made by the child's attorney under the proposed assignment of error is the court's failure to order DNA testing. These briefs point to the mother's November 30, 2015 motion and contend the court erred by failing to order genetic testing upon this motion. As emphasized: "In any action instituted under sections 3111.01 to 3111.18 of the Revised Code, *the court,* upon its own motion, may order and, *upon the motion of any party to the action, shall order* the child's mother, the child, the alleged father, and any other person who is a defendant in the action to submit to *genetic tests.*" (Emphasis added). R.C. 3111.09(A)(1).

{¶21} The father initiated this action by filing a "petition to establish parental rights and responsibilities." In this petition, he asked to be adjudicated the child's father and sought parenting time. He did not seek genetic testing. A parentage action is a civil proceeding to be governed by the Rules of Civil Procedure. *See* R.C.

3111.08(A). We note the mother did not file an answer. More than three months after the father filed this action, the mother filed a pro se "petition for continuance of the proceedings and for issuance of child support order." In seeking a continuance, she referred to her inability to retain counsel due to job loss. She then stated: "While Respondent is seeking employment, she is asking that paternity would be established and confirmed through DNA testing in order to place a temporary support order with the Belmont County CSEA * * *." Her motion then returned to the subject of counsel and asked for a continuance until she could obtain employment, advising she would continue to permit unlimited visitation at her home.

{¶22} As the father points out, the mother was not present at the hearing. He suggests: had she been present and proceeded without raising this issue, the matter may have been considered waived; and her absence renders the result the same. Regardless, the mother's objections to the trial court did not raise the issue of parentage or lack of DNA testing. The father urges her failure to object bars this argument and her previous argument (on whether the court could adjudicate the father's paternity based upon his testimony).

{¶23} "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Juv.R. 40(D)(3)(b)(ii). "An objection to a factual finding * * * shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Juv.R. 40(D)(3)(b)(iii) (and can seek leave of court to supplement objections if filed prior to preparation of transcript). The mother's contentions on appeal as to the evidence on paternity were waived; she did not object to the parentage determination and did not order a transcript for the trial court's review. Juv.R. 40(D)(3)(b)(iv) provides:

> Waiver of Right to Assign Adoption by Court as Error on Appeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law

under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

**{¶24}** As to plain error, the Criminal Rules permit an appellate court to use its discretion to recognize an obvious error affecting substantial rights. *See* Crim.R. 52(B). "[N]o analogous provision exists in the Rules of *Civil* Procedure." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Civil plain error is therefore to be used sparingly.

In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. * * *

We therefore hold that in appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Id.* at 121-123.

**{¶25}** We conclude there was no plain error in the adjudication of parentage as requested by the father's petition, after hearing his testimony, and without ordering genetic testing as asked for within the mother's motion for a continuance and for child support, wherein she asked "that paternity would be established and confirmed" so that she could receive child support.

**{¶26}** The DNA request was not contained in a separate motion but was mentioned within the mother's motion for a continuance (which was based upon her lack of funds to hire counsel) and for child support. Furthermore, the pertinent

sentence in the motion disclosed she sought testing in order to establish the father's parentage so as to receive child support; it was not a request to declare the nonexistence of the father and child relationship. Her request wished to "confirm" the father's admission within his petition.

{¶27} Notably, R.C. 3111.08(B) requires a court to enter a judgment on parentage where the mother brought an action to declare the existence of the father-child relationship and the father admitted the existence of the relationship in his answer. Although the father initiated the action, his pleading specifically admitted he is the biological father of the child. This preemptively admitted the mother's subsequent request to establish his paternity.

{¶28} Finally, the mother was not present at the hearing on parentage in order to contest the father's testimony admitting his parentage. The mother did not advise the trial court she took issue with the magistrate's finding that Appellee was the child's father, and the objection she did file was not accompanied by a transcript. The argument she sets forth in the first assignment of error is overruled.

ASSIGNMENTS OF ERROR TWO & THREE

{¶29} The mother's second and third assignments deal with the best interest factors and contend as follows:

"THE TRIAL COURT ERRED IN RULING THAT OPTION ONE PARENTING TIME WAS IN THE BEST INTEREST OF THE CHILD WITHOUT FIRST ESTABLISHING THE RELATIONSHIP BETWEEN THE CHILD AND MR. WEISAL OR HIS PARENTS."

"THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER ALL RELEVANT FACTORS IN DETERMINING THE BEST INTEREST OF THE CHILD BEFORE AWARDING MR. WEISAL PARENTING TIME."

{¶30} The mother argues the court should have limited the father's parenting time to supervised and/or non-overnight and gradually increased it only after the father attended parenting classes and established a relationship with the child. The mother contends the court failed to consider all relevant statutory best interest factors. She cites R.C. 3109.04(F)(1), specifying the following subdivisions: (a)

(parents' wishes); (c) (child's interaction and interrelationship with parents and any other person who may significantly affect the child's best interest); (d) (child's adjustment to home, school, and community), (e) (mental and physical health of all involved); and (h) ("whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense").

{¶31} As the father was not named the residential parent and he was granted parenting time every other weekend under the court's standard Option 1 guideline, the pertinent statutory best interest factors are those contained in R.C. 3109.051(D), rather than R.C. 3109.04(F)(1).  *See* R.C. 3109.04(A) (naming residential parent); R.C. 3109.12(A) (after parentage is determined under Chapter 3111, the father may seek parenting time); R.C. 3109.12(B), citing R.C. 3109.051(D).  In determining whether to grant parenting time and in establishing a specific parenting time schedule, the court shall consider the factors listed in R.C. 3109.051(D).

{¶32} We note the mother's wishes are not a specific factor in considering parenting time.  Rather, one of the factors provides:  "In relation to requested companionship or visitation by a person *other than a parent*, the wishes and concerns of the child's parents, as expressed by them to the court."  R.C. 3109.051(D)(15) (emphasis added).  As to the mother's citation to R.C. 3109.04(F)(1)(h) (which deals with certain domestic violence convictions), we note R.C. 3109.051(D)(12) contains a similar factor but is introduced by the phrase "In relation to requested companionship or visitation *by a person other than a parent * * **."  R.C. 3109.051(D)(12) (emphasis added).  *Compare* R.C. 3109.051(D)(11) (which is not limited to visitation by a person other than a parent but which deals with the situation of an abused or neglected child).

{¶33} Similar to a factor cited by the mother, a relevant factor in determining parenting time is "[t]he prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *."

R.C. 3109.051(D)(1). The child's adjustment to home, school, and community is a parallel factor in R.C. 3109.051(D)(5), as is the mental and physical health of all parties in R.C. 3109.051(D)(9). Other pertinent factors include: the geographical location and the distance between the parents' residences; the child's and parents' available time, including each parent's employment schedule; the age of the child; and the health and safety of the child. R.C. 3109.051(D)(2),(3),(4), (7),(10). *See also* R.C. 3109.051(D)(16) (any other factor in the best interest of the child).

**{¶34}** A trial court's order regarding visitation will not be reversed absent an abuse of discretion. *In re Z.H.*, 7th Dist. No. 12 MA 27, 2013-Ohio-1278, ¶ 10. *See also Appleby v. Appleby*, 24 Ohio St.3d 39, 41, 492 N.E.2d 831 (1986), citing *State ex rel. Scordato v. George*, 65 Ohio St.2d 128, 129, 419 N.E.2d 4 (1981) (a court's discretion regarding visitation is even broader than the discretion exercised in awarding custody). An abuse of discretion occurs when the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶35}** In making arguments under the best interest factors, the mother utilizes a multitude of factual allegations which were not part of the evidence presented below. The factual allegations presented to the trial court in objecting to the magistrate's decision could only serve the limited purpose of evaluating why the mother missed the hearing and the prejudice she suffered (via her outline of what she would have presented). However, since these factual allegations were not presented at the hearing, they cannot be cited as evidence for our consideration on the issue of whether the parenting time order was in the child's best interest. Likewise, we cannot consider the mother's allegations as to the exercise of parenting time occurring after the trial court proceedings. *See, e.g., State v. Ishmail*, 54 Ohio St.2d 402, 405–406, 377 N.E.2d 500 (1978) (a party cannot add matter to the record on appeal if it was not part of the trial court record as the reviewing court is limited to what transpired in the trial court as reflected in that record).

**{¶36}** As for evidence in the trial record, the mother points to the child's young age. In speaking of the child's interaction with the father and his parents, the mother

points to the father's testimony he had not seen the child since he filed his petition almost eight months earlier. However, he explained this was due to the mother's refusal to allow him to exercise visitation outside of her presence. The mother suggests the father's testimony was not credible. Nevertheless, his credibility in this parenting time action was a matter within the province of the fact-finder. *See, e.g., Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997).

{¶37} The mother's objection argued the magistrate's decision on parenting time was not in the child's best interest, stating any visitation outside the mother's presence would cause undue stress to the child and place the child in harm's way. However, she failed to present evidence at the hearing (due to her absence therefrom) on this contention or the underlying allegations. Although some of the factual allegations in the mother's objection could be construed as corresponding to statutory best interest factors, they were not presented at the hearing via testimony and thus could not be considered on the issue of the child's best interest. As discussed further infra, the mother failed to raise as an assignment of error the trial court's failure to order a further hearing due to her absence.

{¶38} In awarding parenting time, the magistrate's decision and the trial court's judgment entry did not make factual findings on the specific best interest factors. Nevertheless, "there is no statutory mandate that a trial court separately address each of the best interests factors." *In re J.K.*, 7th Dist. No. 14 CA 899, 2014-Ohio-5502, ¶ 31. "[W]e presume the court considered the factors absent evidence to the contrary." *Id.* (a case where it could not be ascertained; it was only required to rule on best interests in an original custody decree). Here, the magistrate's decision and the trial court's judgment entry found Option 1 parenting time was in "the best interest of the minor child."

{¶39} Furthermore, an objection to a magistrate's decision shall be specific and state with particularity all grounds for objection, and the failure to do so constitutes waiver. Juv.R. 40(D)(3)(b)(ii), (iv). The mother's objection did not specifically argue the magistrate failed to consider all of the relevant best interest factors. Rather, she generally stated the magistrate's decision on parenting time was

not in the child's best interest, almost entirely relying on the allegations she failed to present at the hearing. Although the evidence presented by the father did not encompass every factor, the mother did not present evidence at the hearing to show any unaddressed factors were pertinent and to indicate to the magistrate how parenting time would not be in the child's best interest. The evidence she relies upon now cannot be utilized to show the child's best interest.

{¶40} Lastly, as the father points out, the mother did not provide a transcript for the trial court's review when she filed her objection as to parenting time. Pursuant to Juv.R. 40(D)(3)(b)(iii), "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact under Juv.R. 40(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Consequently, the mother's second and third assignments of error are overruled as she failed to demonstrate via admissible evidence at the hearing that the requested parenting time would be contrary to the child's best interest. These assignments of error are overruled.

ASSIGNMENT OF ERROR NUMBER FOUR

{¶41} The mother's fourth and final assignment of error provides:

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO LIMIT MR. WEISAL'S VISITATION WITH THE CHILD AFTER THE CHILD'S MOTHER PRESENTED CLEAR AND CONVINCING EVIDENCE THAT THE PROPOSED VISITATION ARRANGEMENT WOULD BE HARMFUL TO HER CHILD."

{¶42} As the father points out, the "evidence" (to which her assignment of error refers) was not presented at the hearing before the magistrate but was contained in written accusations filed after the hearing. The mother filed an objection and other documents (within the period for filing timely objections). Contrary to the mother's contention, the trial court's final order could not impose the limited parenting time proposed by her merely based upon her written accusations, even though some were in affidavit form. The evidence had to be presented at a hearing in order to be considered in ascertaining the propriety of a particular parenting time order.

**{¶43}** Considering the mother's absence from the hearing, the evidence to which she refers could only be used to support the portion of her objection presenting the reason for her absence from the hearing and to show she had intended to contest the father's request. Pursuant to Juv.R. 40(D)(4)(b), the trial court can "hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." Before ruling on an objection, the trial court "may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." Juv.R. 40(D)(4)(d).

**{¶44}** The finding of reasonable or unreasonable diligence is a matter for the trial court's discretion. We note the affidavit she submitted did not encompass her allegations as to how she missed the hearing; these were set forth in non-notarized filings. We also note she did not specifically request a hearing on her objections or seek a remedy under Juv.R. 40(D)(4)(b). As aforementioned, the mother failed to provide the transcript of the magistrate's hearing for the trial court's review. Regardless, the mother did not assign as error the trial court's failure to hear a previously-referred matter, take additional evidence, or return the matter to the magistrate. Rather, she insists her written accusations filed in the trial court entitle her to the more limited visitation she believes was warranted. This assignment of error, contending she proved the ordered visitation would harm the child, is overruled.

**{¶45}** For all of the foregoing reasons, the trial court's judgment is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.